**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**HUNTINGTON**


**CRISTI SABRINA PAULEY,**

    **Plaintiff,**

**v.**                                        **Civil Action No. 3:17-cv-02411**

**NANCY A. BERRYHILL,**
**ACTING COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**


## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Motion for Judgment on the Pleading (ECF No. 9) and Defendant's Brief in Support of Defendant's Decision (ECF No. 12). This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for supplemental security income (SSI) under Title XVI of the Social Security Act.

### Background

Claimant, Cristi Sabrina Pauley, filed an application for SSI on June 27, 2011. Claimant alleged disability beginning January 13, 2007.[1] The claim was denied initially and upon reconsideration. Claimant filed a request for hearing. Hearings were held on February 26, 2013, and December 12, 2013, before an Administrative Law Judge (ALJ) in Huntington, West Virginia. The ALJ denied Claimant's application on December 31, 2013. Claimant requested the Appeals Council review the ALJ's decision. On May 28, 2015, the Appeals Council vacated the ALJ's

---

[1] At the hearing on August 18, 2016, Claimant amended her onset date to June 27, 2011 (Tr. at 45).

decision and remanded the case to the ALJ for another hearing and *de novo* decision[2] (Tr. at 174-175).  On August 18, 2016, the ALJ held a hearing.  The Appeals Council denied Claimant's request for review on February 15, 2017 (Tr. at 1-4).  Subsequently, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

<u>Standard of Review</u>

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability.  *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520 and 416.920 (2017).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  *Id.* §§ 404.1520(a) and 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  *Id.* §§ 404.1520(b) and 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  *Id.* §§ 404.1520(c) and 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  *Id.* §§ 404.1520(d) and 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of

---

[2] In the remand order, the Appeals Council instructed the ALJ to: (1) obtain additional evidence concerning Plaintiff's impairments in order to complete the administrative record; (2) give further consideration to Plaintiff's maximum RFC and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations; and (3) obtain supplemental evidence from a VE to clarify the effect of the assessed limitations on Plaintiff's occupational base (Tr. at 175).

past relevant work.  *Id.* §§ 404.1520(e) and 416.920(e).  By satisfying inquiry four, the claimant

establishes a *prima facie* case of disability.  *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).  The

burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-869 (4th Cir.

1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms

of substantial gainful activity, considering claimant's remaining physical and mental capacities and

claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f) and 416.920(f)

(2017).  The Commissioner must show two things: (1) that the claimant, considering claimant's

age, education, work experience, skills and physical shortcomings, has the capacity to perform an

alternative job, and (2) that this specific job exists in the national economy. *McLamore v.*

*Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must

follow a special technique at every level in the administrative review process." 20 C.F.R. §§

404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs

and laboratory findings to determine whether the claimant has a medically determinable mental

impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the

impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those

sections provide as follows:

> *(c) Rating the degree of functional limitation.*
>
> > (1)    Assessment of functional limitations
> > is a complex and highly individualized process that
> > requires us to consider multiple issues and all
> > relevant evidence to obtain a longitudinal picture of
> > your overall degree of functional limitation. We will
> > consider all relevant and available clinical signs and
> > laboratory findings, the effects of your symptoms,
> > and how your functioning may be affected by factors
> > including, but not limited to, chronic mental

disorders, structured settings, medication and other treatment.

(2)     We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3)     We have identified four broad functional areas in which we will rate the degree of your functional limitation:

Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4)     When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if the claimant's

impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section. 20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since June 27, 2011 (Tr. at 16). Under the second inquiry, the ALJ found that Claimant suffers from the medically determinable impairments of degenerative joint disease, osteoarthritis, alcohol abuse, depression, anxiety, carpal tunnel syndrome, degenerative disc disease and obesity. (*Id.*) However, the ALJ found that Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. at 17). The ALJ found that Claimant has the residual functional capacity (RFC) to perform light work, except she can occasionally lift/carry 30 pounds and can frequently lift carry 20 pounds; can sit

for three hours at a time, for four hours in an eight hour day; can stand one hour at a time, for a total of two hours in an eight hour day; can walk for one hour at a time, for a total of two hours in an eight hour day; can walk for one hour at a time, for a total of two hours in an eight hour day; can frequently reach, handle, finger, feel, push/pull; can never climb ladders or scaffolds and can frequently climb stairs and ramps, and frequently balance; never crawl, occasionally stoop, kneel and crouch; frequently be exposed to unprotected heights and vibration; limited to simple instructions; occasional interaction with coworkers and supervisors; no interaction with the general public; low stress work, defined as no production quotas or strict time limits (Tr. at 19). The ALJ concluded that Claimant is unable to perform any past relevant work and may perform positions such as routine clerk, price marker and garment bagger (Tr. at 26). Accordingly, the ALJ denied Claimant's application for SSI (Tr. at 27).

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Cellebreze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize

the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was born on February 5, 1967, and was 44 years old on the date the application was filed (Tr. at 25). Claimant last attended, but did not finish, the 10th grade (Tr. at 42). Claimant has a GED. She has 3 children. (*Id.*) Claimant did not have a driver's license on the date of the hearing, August 18, 2016. Claimant's dad drives her places. She previously had a driver's license but lost it due to a DUI in December 2016 (Tr. at 43).

<u>The Medical Record</u>

The medical record has been adopted, as set out in the Claimant's Brief, Defendant's Brief and the ALJ's decision to the extent as follows.

On November 4, 2009, Samuel Januszkiewicz, M.D., completed an assessment of Claimant's ability to do work-related activities (Tr. at 475-477). Dr. Januszkiewicz reported that Claimant had "poor" ability to follow rules at work, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, maintain attention/concentration, understand, remember, and carry out detailed, but not complex job instructions, behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability (Tr. at 475-476). Dr. Januszkiewicz also opined that Claimant had "fair" ability to function independently, understand, remember and carry out simple job instructions and maintain personal appearance (Tr. at 475-476).

On March 6, 2013, Claimant's treating psychiatrist, Dr. Phillip Spangler, completed a medical source statement of Claimant's ability to mentally do work-related activities (Tr. at 1504-

1508). Dr. Spangler checked boxes indicating that Claimant had no limitations in her ability to understand, remember and carry out simple or complex instructions; make judgments on complex work-related decisions; or interact appropriately with the public, co-workers or supervision (Tr. at 1504-1505). However, Dr. Spangler checked boxes opining that Claimant had moderate difficulties in her ability to respond appropriately to usual work situations and change in a routine work setting (Tr. at 1505).

On June 5, 2013, Claimant saw Kip Beard, M.D., for a consultative examination at the request of the state agency (Tr. at 1846). Claimant stated that she was unable to work due to back and joint pain, carpal tunnel syndrome and cubital tunnel syndrome (Tr. at 1846). On examination, Claimant appeared mildly uncomfortable, but had a normal gait and she could stand unassisted, arise from a seated position and step up and down from the examination table without difficulty (Tr. at 1848). Claimant had mild pain and tenderness in her elbow, wrists, knees and lumbar spine. She he had normal range of motion throughout with the minor exception of slightly reduce lumbar flexion, negative straight leg raising, no muscle atrophy and no evidence of weakness (Tr. at 1849-1850).

Dr. Beard assessed Claimant with bilateral carpal tunnel syndrome, status post release; left ulnar neuropathy, status post left ulnar release; osteoarthritis; and chronic thoracolumbar strain and bilateral lumbar radicular symptoms (Tr. at 1850). Based on this examination, Dr. Beard opined that Claimant could lift and carry up to 50 pounds occasionally and 20 pounds frequently; sit two hours at one time and four hours in an eight-hour workday; stand one hour at one time and two hours in an eight-hour workday; and walk one hour at one time and two hours in an eight-hour workday (Tr. at 1851-1852). Dr. Beard also determined that Claimant could frequently perform manipulative activities, operate foot controls, kneel and climb stairs and ramps; continuously

8

balance; and occasionally crawl, crouch, stoop and climb ladders or scaffolds (Tr. at 1853-1854). Dr. Beard noted that Claimant could never tolerate unprotected heights; occasionally tolerate pulmonary irritants, temperature extremes and vibration; and frequently tolerate moving mechanical parts, operating a motor vehicle and humidity/wetness (Tr. at 1855).

The ALJ sent Claimant for a second consultative examination on November 3, 2015, with Dr. Stephen Nutter (Tr. at 1907). Claimant complained of back and joint pain, but her examination remained unimpressive. (*Id.*) Claimant had a normal gait and station, normal intellectual functioning and good memory (Tr. at 1908). She had some pain and tenderness in her joints and decreased lumbar range of motion but had either normal or slightly reduced range of motion in all other joints, intact (5/5) grip strength, intact fine manipulation abilities, negative straight leg raising test and normal muscle strength in her upper and lower extremities (Tr. at 1909-1910).

Dr. Nutter assessed Claimant with chronic lumbar strain and degenerative arthritis (Tr. at 1910). Dr. Nutter determined that Claimant could lift and carry up to 50 pounds occasionally and 20 pounds frequently. Dr. Nutter reported that Claimant could sit three hours at one time and four hours in an eight-hour workday. He stated that Claimant could stand one hour at one time and two hours in an eight-hour workday. He determined that Claimant could walk one hour at one time and two hours in an eight-hour workday (Tr. at 1913-1914). Dr. Nutter also opined that Claimant could frequently perform manipulative activities, balance and climb stairs and ramps; continuously balance and operate foot controls; occasionally crouch, kneel and stoop; and never crawl or climb ladders or scaffolds (Tr. at 1915-1916). Dr. Nutter noted that Claimant could frequently tolerate unprotected heights and vibration and continuously tolerate pulmonary irritants, temperature extremes, moving mechanical parts, operating a motor vehicle and

humidity/wetness (Tr. at 1917).

On August 3, 2016, Dr. Januszkiewicz suggested that Claimant would not be able to engage in competitive employment on a consistent basis (Tr. at 3154-3155).

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ failed to give proper weight to the opinions of Claimant's treating psychiatrists and the opinions of consulting examining physicians (ECF No. 9). Claimant argues that the ALJ failed to fairly and adequately resolve the issues outlined in the order of the AC remanding case back to ALJ on May 28, 2015. In response, Defendant asserts that Claimant had the residual functional capacity (RFC) to perform a limited range of light work (ECF No. 12). Defendant asserts that evidence as a whole, including medical source opinion evidence, supports the ALJ's RFC determination.

Discussion

Claimant asserts that the ALJ erred when she failed to explain any meaningful manner why she disregarded the opinion of Claimant's treating psychiatrist, Samuel A. Januszkiewicz, M.D. (ECF No. 9). Dr. Januskiewicz stated that Claimant has a poor ability to make occupational adjustments in numerous areas of vocational significance. Dr. Januskiewicz stated that Claimant is unable to engage in competitive employment (8 hours a day, 5 days a week) on a consistent basis. The ALJ gave this treating source opinion "little weight" because "… it appears to be based solely on the claimant's subjective complaints" (Tr. at 24-25). Claimant asserts that "Such a lack of meaningful analysis of a treating source opinion is unacceptable and should justify a reversal or remand" (ECF No. 9).

Interestingly, Dr. Januskiewicz's treatment notes dated one month prior reflect that Claimant's mental exam was "essentially normal and she was noted in only mild distress and was

10

encouraged to self sooth her symptoms" (Tr. at 25).  Dr. Januskiewicz's treatment notes reflect that Claimant's "risk assessment at this time was felt to be minimal."  (*Id.*)

Weight Afforded Medical Opinions

Social Security Ruling 96-6p provides that findings of fact made by state agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the ALJ and Appeals Council levels of administrative review. ALJs and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.

As explained by SSR 96-6p, the regulations provide "progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." For example, SSR 96-6p states that opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.

Thus, SSR 96-6p concludes that the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as (1) the supportability of the opinion in light of the evidence in the record; (2) consistency with the record, including other medical opinions; (3) and any explanation for the opinion. *Id.*

Social Security Ruling 96-7p confirms that ALJs and the Appeals Council are required to consider findings of fact by state agency medical and psychological consultants and other program physicians and psychologists about the existence and severity of an individual's impairment(s),

11

including the existence and severity of any symptoms. See 65 Fed. Reg. 11,866 (Mar. 7, 2000). While ALJs and the Appeals Council are not bound by any state agency findings, they may not ignore these opinions and must explain the weight they give to the opinions in their decisions. *Id.*

Further, "[u]nless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, non-treating sources, and other non-examining sources who do not work for us." *(Id.)*

Examples of the kinds of factors that an administrative law judge must consider when evaluating the findings of State agency medical and psychological consultants are provided in paragraph (c)[3] of §§ 404.1527 and 416.927. Factors in weighing a medical opinion include the extent to which it is supported by medically acceptable clinical and laboratory diagnostic techniques, and the extent to which it is inconsistent with other evidence in the record. 20 C.F.R. § 416.927(c)(2). Where the record provides greater support for a non-examining state agency physician opinion, an ALJ may afford it greater weight than an examining or treating physician opinion. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361-362 (3d Cir. 2011). "Although there was record evidence from a treating psychiatrist suggesting a contrary conclusion, the ALJ is entitled to weigh all evidence in making its finding . . . An 'ALJ is not bound to accept the opinion of any medical expert, but may weigh the medical evidence and draw its own inferences.'" *Brown v. Astrue*, 649 F.3d 193 (3d Cir. 2011). In the present case, the ALJ evaluated the opinions of Drs. Januszkiewicz and Spangler and accorded them appropriate weight (Tr. at 32-33).

---

[3] Unless a treating source's opinion is given controlling weight, all of the following factors will be considered in deciding the weight given to any medical opinion: (1) Examining relationship; (2) Treatment relationship; (3) Supportability; (4) Consistency; (5) Specialization; and (6) Other factors. 20 C.F.R. 416.927(c) and 404.1527.

Substantial evidence supports the ALJ's decision to afford little weight to the opinions of Drs. Januszkiewicz and Spangler, who checked off boxes indicating that Claimant had disabling mental functional limitations (Tr. at 23-24). The ALJ found the opinions from Drs. Januszkiewicz and Spangler unpersuasive because these opinions were primarily based on Claimant's complaints and were contrary to the other substantial evidence of record. *(Id.) See* 20 C.F.R. § 416.927(c)(4) (stating that the more an opinion is consistent with the record, the more weight it will be given); *see also Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (ALJ may assign lesser weight to the opinion of a treating physician that was based largely upon a claimant's self-reported symptoms); *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (ALJ properly rejected physician's opinion that was based on the claimant's own subjective complaints).

The ALJ considered that Drs. Januszkiewicz and Spangler accepted Claimant's subjective statements (Tr. at 23-24). The ALJ pointed out that the record showed Claimant's condition improved with mental health treatment and medication. Treatment notes reflect that Claimant was treated with several mental health providers on an approximately monthly basis since February 2008 for depression, anxiety and medication management (Tr. at 556-569, 575-576, 646-648). During these appointments, Claimant complained of psychosocial stressors such as difficulty with her children, alcohol abuse, and dysfunctional relationships (Tr. at 457-458, 462, 557). Notwithstanding her complaints of depression and anxiety, her mental status examinations were unremarkable and showed improvement:

- Dr. Januszkiewicz completed a Routine Abstract Mental Form dated November 22, 2011, indicating that Claimant had been seen 16 times in the past year. Dr. Januszkiewicz noted that Claimant carried the diagnoses of major depressive disorder and anxiety disorder not otherwise specified and a global assessment of functioning (GAF) score of 60, indicative of a borderline-mild impairment (Tr. at 643). Dr. Januszkiewicz also noted that Claimant had not recently had a mental status examination, but she

had "done well." (Tr. at 643);

- During a consultative examination with Lisa Tate, M.A. on November 23, 2011, Claimant had proper orientation; euthymic mood; logical and coherent thought processes; no indication of perceptual disturbances; fair insight; normal judgment, immediate memory and remote memory; no evidence of suicidal/homicidal ideation; and only mildly deficient concentration and recent memory (Tr. at 652). Ms. Tate noted that Claimant's social functioning and ability to maintain pace and persist were normal (Tr. at 653);

- On January 12, 2012, Claimant reported to Aaron Lane, MS III, that her mood was improved and she no longer felt as depressed as she did (Tr. at 1464). Claimant also reported that she enjoyed spending time with her grandchildren and working on puzzles. (*Id.*) Her mental status examination was grossly normal (*Id.*);

- On February 28, 2012, Claimant reported to Kelly Daniel, M.A., that she was "doing quite well" (Tr. at 1460);

- On May 31, 2012, Claimant stated to Kelly Daniel, M.A., that she was "doing some better" (Tr. at 1458);

- On June 6, 201, Claimant reported to Phillip Spangler, M.D., that she was "doing fairly well overall" and her mental status examination was within normal limits, showing appropriate appearance, no involuntary movements, good eye contact, euthymic affect, logical and goal directed thought process, and no evidence of psychosis (Tr. at 1456);

- Claimant's mental status examinations to Dr. Spangler were unchanged on September 26, 2012 (Tr. at 1453), January 23, 2013 (Tr. at 1440) and February 27, 2013 (Tr. at 1438);

- On October 30, 2012, Claimant indicated to Kelly Daniel, M.A., that she was "doing much better" and revealed that she had been active on several dating sites (Tr. at 1443);

- On November 27, 2012, Claimant stated to Kelly Daniel, M.A., that she was "doing okay for the most part" and had started developing a relationship with a man she met on a dating site (Tr. at 1442);
- A treatment note from Kelly Daniel, M.A., on March 21, 2013, indicated that Claimant was "doing pretty well" (Tr. 1871). Claimant noted that she had been taking care of her mother for up to 16 hours per day for the past 35 days (*Id.*);

- Claimant was admitted to St. Mary's Medical Center on February 4, 2015, for suicidal ideation with attempt via prescription medication overdose (Tr. at 2485). However, Claimant admitted that she had not outpatient psychiatric treatment "for quite a while" (Tr. at 2511). An attending psychiatrist adjusted Claimant's medications and initiated individual and group psychotherapy, recreational therapy, patient education, and discharge planning (Tr. at 2517). At discharge on February 16, 2015, Claimant was alert and oriented with good judgment, fair insight, normal memory, calm and pleasant behavior, and no suicidal/homicidal ideation or auditory/visual hallucinations (Tr. at 2502);

- Claimant was again hospitalized at St. Mary's Medical Center between September 9 and 25, 2015, for suicidal ideation (Tr. at 2716). Notably, Claimant reported that she had consumed 12 beers and her blood alcohol level was 118.[4] (*Id.*) Claimant acknowledged that she had not sought outpatient mental health treatment since she was last discharged from the hospital in February 2015. (*Id.*) Claimant's condition gradually improved and by the time of discharge she had no suicidal ideation, no auditory or visual hallucinations, stable sleep, and improved mood (Tr. at 2719); and

- Claimant's most recent treatment record from Kelly Daniel, M.A., on July 6, 2016 indicated that she was doing "okay" (Tr. at 3120). Her mental status examination was unremarkable showing Claimant to be cooperative with adequate grooming, normal speech, good eye contact, and good impulse control (Tr. at 3121). Claimant stated that she did not feel hopeless, she was positive regarding the future, and she was functioning appropriately. (*Id.*) Claimant had no psychosis, logical and goal directed thought processes, good judgment, and intact insight, memory and concentration. (*Id.*)

As the opinions of Drs. Januszkiewicz and Spangler were based entirely on subjective complaints and not well supported by the longitudinal evidence of record, the ALJ reasonably declined to give them significant weight. 20 C.F.R. § 416.927(c)(3), (4). The ALJ gave greater weight to the opinion of state agency psychologist Paula Bickham, Ph.D. (Tr. at 670-672). Dr. Bickham opined that Claimant retains the ability to learn and perform work-like tasks in an

---

[4] This is the number as reflected in Claimant's medical report (Tr. at 2716).

environment with few distractions and routine work (Tr. at 672).  Dr. Bickham is an expert in evaluating disability claims, and her opinion was entitled to some weight because it was consistent with the record (Tr. at 25). *See* 20 C.F.R. § 416.927(e)(2)(i) (explaining that state agency physicians are highly qualified and experts in  Social Security disability evaluation); *Chandler*, 667 F.3d at 361 (finding the ALJ was entitled to rely on the state agency physician's opinion and explaining that "[s]tate agen[cy] opinions merit  significant consideration").

"Where conflicting evidence allows reasonable minds to differ as to whether a  claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.*   Although Claimant may disagree with the ALJ's ultimate assessment, that does not mean that the ALJ's  decision was erroneous or that Claimant can ask this Court to reweigh the evidence to arrive at a  different conclusion.  Because substantial evidence supports the ALJ's assessment of the opinions  of Drs. Januszkiewicz and Spangler, as well as the entirety of the medical evidence, the ALJ's  decision should be affirmed.

<u>RFC</u>

Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record, including the effects of treatment and the limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication. *Id.* at *5. Social Security Ruling 96-8p explains that the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe v. Colvin,* 826 F.3d 176, 179-80. (4th Cir. 2016). (citing *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015). (quoting SSR 96-8p, 61 Fed. Reg. at 34, 478; see also *Clifford*

v. *Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

An RFC refers to the most a claimant can still do despite her limitations and is an assessment that is based upon all of the relevant evidence, including descriptions of limitations. 20 C.F.R. §§ 416.945(a), 404.1545. The Fourth Circuit has held that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013).

The final responsibility for determining a claimant's RFC is reserved to the Commissioner, who will not give any special significance to the source of another opinion on this issue. 20 C.F.R. §§ 416. 927(d)(2), (3), 404.1527. For cases at the hearing level, the responsibility for determining a claimant's RFC rests with the ALJ. 20 C.F.R. §§ 416.946, 404.1546. Therefore, an ALJ clearly has the duty and authority to make an independent assessment of a claimant's RFC based on the evidence of record.

In the present case, the ALJ did not find that Claimant could perform a full range of light work. Instead, the ALJ found that Claimant could perform a reduced range of light work. The role of the vocational expert in a situation that falls between two grid rules (such as between light and sedentary) is carefully explained in SSR 83-12. SSR 83-12 instructs the ALJ what to do when a claimant has exertional limitations that fall somewhere in between the regulatory criteria for exertional ranges of work: because "more difficult judgments are involved" about the remaining occupational base in such situations, it is advisable to obtain vocational specialist assistance. SSR 83-12, 1983 WL 31253, at *3. The ALJ did just that: she procured the live testimony of a vocational expert to assist and asked the VE to advise what jobs, if any, would be

17

compatible with all of the limitations she assessed (Tr. at 65-70).

Accordingly, the ALJ appropriately applied the light grid rules and found that Claimant could perform a reduced range of light work.  At the hearing, the ALJ asked the VE to advise what jobs, if any, would be compatible with all of the limitations she assessed (Tr. at 65-66).  The VE testified that there were 30,000 routing clerk jobs, 55,000 price marker jobs, and 10,000 garment bagger jobs existing in the national economy that Claimant could perform (Tr. at 26).

Claimant asserts that the ALJ disregarded the VE's testimony (ECF No. 9).  Specifically, Claimant argues the ALJ relied upon a hypothetical question that did not adequately include all of Claimant's functional limitations by not specifically including all of the functional limitations described by Drs. Januszkiewicz and Spangler.  Claimant also speculates that that she would experience off-task periods  in light of the physical limitations assessed by Drs. Beard and Nutter (Pl.'s Br. at 7). However,  neither Dr. Beard (Tr. 1851-1856) nor Dr. Nutter (Tr. 1913-1918) indicated that claimant would be off-task due to her physical limitations and Claimant has cited to no evidence supporting such a conclusion. As discussed above, the opinions from Drs. Januszkiewicz and Spangler were  afforded little weight because they were inconsistent with and unsupported by the medical and  non-medical evidence of record.

The ALJ is not required to include all alleged limitations in the hypothetical question posed to the VE; she must include only those limitations supported by the record.  *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (concluding that an ALJ's hypothetical question need only include those impairments supported by the record); *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005) (a hypothetical question is unimpeachable if it adequately reflects a RFC for which the ALJ had sufficient evidence): *see also Craigie v. Bowen*, 835 F.2d 56, 57-58 (3d Cir. 1987) (holding that an ALJ is not required to credit VE testimony elicited in response to a hypothetical question

that includes limitations the ALJ finds not to be credible).

In addition, an ALJ may reject hypothetical questions posed by a claimant's attorney that are more restrictive than the ALJ's own hypothetical question.  *See Craigie*, 835 F.2d at 57-58; *see also Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986).  Thus, the ALJ committed no error when she relied only on the VE's testimony that included the limitations she deemed credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ . . . is required to incorporate only those limitations accepted as credible by the finder of fact.");  *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1002-03 (6th Cir. 1988) (explaining that a hypothetical question need not include a limitation that is not substantiated by objective medical evidence).   In the present case, the ALJ's hypothetical questioning of the VE was appropriate and well supported  by the evidence as outlined above.

Lastly, Claimant argues that the ALJ did not follow the Appeals Council's remand order (ECF No. 9). The Appeals Council vacated the ALJ's first hearing decision and remanded the  case for further proceedings (Tr. at 174-75).  Thus, the second hearing decision, dated September 21, 2016, is the only "final decision" before this Court (Tr. at 13-27).

The regulations provide that the ALJ "shall take any action that is ordered by the Appeals Council" and "may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 416.1477(b). Nothing in those regulations diminishes the ALJ's statutory authority to weigh the evidence before him and make findings of fact after remand.  In the present case, the ALJ conducted a new hearing, reconsidered all of the evidence, obtained the testimony of a  VE, and issued a new decision.

42 U.S.C. § 405(g) does not provide the Court with authority to review intermediate agency actions that occur before the issuance of the agency's  "final decision."  In the present case,

19

the Appeals Council denied Claimant's request for review, which indicates that the Appeals Council found that the ALJ had sufficiently complied with its remand order (Tr. 1-4). *See Bull v. Comm'r of Soc. Sec.,* No. 2:12cv183, 2013 WL 499248, at *8 (E.D. Va. 2013) (stating that because the Appeals Council had refused to review the ALJ's decision after its remand, it became the final decision of the Commissioner, and the court could "only consider the evaluations of the ALJ in his second decision" under 42 U.S.C. § 405(g)); *Houston v. Sullivan,* 895 F.2d 1012, 1015–16 (5th Cir. 1989) (holding that the ALJ was free to re-evaluate the claimant's work capacity after Appeals Council's remand, because it was not inconsistent with the Council's remand order); *Dyer v. Secretary of H.H.S.*, 889 F.2d 682, 684 (6th Cir. 1989). Other courts have declined to review the ALJ's compliance with an Appeals Council remand order, because the Appeals Council's remand order was not the agency's final decision on the merits of the claim. *See e.g.* No. 1:06cv591, *Bass v. Astrue*, 2008 WL 3413299, at *4 (M.D. N.C. 2008) (stating that "[t]he Court does not review internal agency-level proceedings, and therefore will not address whether the ALJ complied with specific provisions of the Appeals Council's remand order"); *Harris v. Astrue*, No. C09-385-JLR-BAT, 2010 WL 816145, at *7 (W.D. Wash. 2010); *Riddle v. Astrue*, No. 2:06-00004, 2009 WL 804056, at *19 (M.D. Tenn. 2009).

<u>Conclusion</u>

The Social Security Act defines disability as the inability to do any substantial gainful activity by reason of any medically determinable impairment, "which can be expected to result in death, or which has lasted or can be expected to last, for a continuation period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, an individual must have a severe impairment that precludes her from performing not only her previous work, but also any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A) and §

1382c; 20 C.F.R. §§ 404.1505(a) and 416.912.  The claimant bears the ultimate burden of proving disability within the meaning of the Act.  *See* 42 U.S.C. § 423(d)(5)(A) and § 1382c; 20 C.F.R. §§ 404.1512(a) and 416.912.

For the reasons set forth above, the ALJ's decision is supported by substantial evidence, therefore, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 9), **GRANT** Defendant's Brief in Support of Defendant's Decision (ECF No. 12), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Judge Robert C. Chambers.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Chambers and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date:    August 27, 2018.

Dwane L. Tinsley
United States Magistrate Judge